# ALICE LLOYD BUCHANAN ET AL. *vs.* EDWARD LLOYD ET AL.

*Legacy Charged on Land—Notice to Alienees—Construction of Will and Codicil—Limitations and Laches—Life Estate with Remainder Over—Application of Payments.*

A will and a codicil must be construed together and what is plainly given by the will is not to be treated as revoked by doubtful or ambiguous expressions used in the codicil.

When a testator gives a pecuniary legacy to his daughter directing that the same shall be paid by his son and devises land to the son " in consideration of the payment," then such legacy is a charge upon the land and is enforceable against the alienees thereof; the probate of the will being notice to them of the charge.

A bill to enforce payment of a legacy charged upon land against the alienees thereof is not barred by limitations when the alienees claim title under deeds made less than twenty years prior to the institution of the suit.

When a devisee of land charged with a legacy executes a mortgage of the same but continues to pay interest on the legacy, and the mortgagee is never in possession, the statute of limitations is not a bar to the enforcement of the charge on the land, although the mortgage was executed more than twenty years before the institution of the suit.

A legacy charged upon land was bequeathed to A. for life with remainder to A.'s children. A. survived the testator for 58 years. *Held*, that a bill filed by A.'s children five years after her death to enforce payment of the legacy against alienees of the land is not barred by laches.

By his will, testator gave to his three sons in trust for his daughter A. for life, a certain farm and $5,000 in money, with remainder to A.'s children. By a codicil the devise of the farm was revoked and the testator gave to his sons in trust for A., " agreeably to the provisions of the trust in said

will," the sum of $15,000 in addition to the $5,000 given by
the will. It was provided that $10,000 of the $15,000 should
be paid by testator's son D., and $5,000 by his son E. The
testator declared that in consideration of these payments he
devised the X farm to D. and the Y farm to E. The trustees
invested $7,500 of the $15,000 legacy in property which ulti-
mately came into possession of A.'s children. The testator's
sons and afterwards his grandson paid interest on the bal-
ance of the legacy to A. and after her death paid interest and
a part of the principal to A.'s children. Upon a bill to
enforce payment of the balance of the legacy against testator's
grandson who had owned the two farms, and against his
grantees of the same, *Held:*

1st. That after the termination of the life estate of A. in the
sums bequeathed, the same passed to her children, although
they were not expressly named as remaindermen in the
codicil, since it is apparent that the name of A. as legatee
was used in the codicil in a representative sense so as to
include her children.

2nd. That it was the intention of the testator to charge the
payment of the $15,000 bequeathed to A. upon the two farms
mentioned in the codicil in the proportions therein set forth,
and that this charge follows the land in the hands of the
alienees thereof and is enforceable against them to the extent
of the balance remaining unpaid.

3rd. That payments made to A.'s children should be credited
on the $15,000 legacy and not on the general legacy of $5,000,
since the former was the more burdensome obligation, being
a lien on the land.

Appeal from a *pro forma* decree of the Circuit Court
for Talbot County. The bill of complaint was filed
June 30, 1897. Mrs. Ann Catherine Buchanan, mother
of the plaintiffs, died January 7, 1892.

The cause was argued before McSHERRY, C. J., Fow-
LER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Joseph. C. France* (with whom was *Clayland Mullikin*
on the brief), for the appellants.

*William A. Fisher* and *William H. Adkins* (with whom was *J. F. Bateman* on the brief), for the appellees.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a *pro forma* decree of the Circuit Court for Talbot County dismissing a bill filed by the appellants, who are the children of Ann Buchanan and those claiming under them, to enforce certain rights asserted by them under the will of their grandfather, Ex-Governor Edward Lloyd.

Governor Lloyd died in 1834 leaving surviving him a widow and three sons and four daughters. By his will, executed in 1829, after making suitable provision for his widow, he gave certain property to each of his three sons absolutely and also gave them other property in trust for each of his four daughters for life with remainder to her children. The residue of the real estate was given to his son Edward and the residue of the personalty to the three sons who were made the executors of the will.

The share of each daughter was given to the trustees for and during her life " and no longer," and the remainder therein was, at her death, given directly to her children without the intervention of the trustees. The property appropriated in this manner to the use of the testator's daughter Ann Catherine, afterwards Ann Buchanan, and her children, consisted of a farm called " Davis Farm " and $5,000 in money and certain woodland contiguous to the farm.

On April 12, 1834, Governor Lloyd made a codicil to his will of which the portions material to this controversy are as follows: " I hereby revoke all that part of my will in which I give and devise to my daughter, Ann Catherine Lloyd, my farm called ' Davis Farm ' with one hundred and fifty acres of woodland contiguous to the same, and in lieu thereof I give, devise and bequeath to my sons Edward Lloyd, James M. Lloyd and Daniel Lloyd and the survivors or survivor of them in special trust for the use and benefit of my daughter, Ann Catherine Lloyd, agreeably to the provisions and

conditions of the trust in said will expressed, the sum of fifteen thousand dollars (in addition to the sum of five thousand dollars given and devised in said will) which fifteen thousand dollars I will and direct shall be paid as follows, ten thousand dollars to be paid by my son Daniel Lloyd and five thousand dollars to be paid by my son Edward Lloyd, and I hereby will and direct that until the above respective sums are paid over and invested in some safe fund for the use and benefit of my said daughter, Ann Catherine Lloyd, that my said sons, Edward Lloyd and Daniel Lloyd, shall annually pay to their sister legal interest for the same."

" In consideration of the payment of ten thousand dollars by my son, Daniel Lloyd, to his sister, Ann Catherine Lloyd, I give, devise and bequeath to my son, Daniel Lloyd, his heirs and assigns, ' my farm called Davis Farm together with one hundred and fifty acres of woodland contiguous to the same,' which in my will is devised to my daughter, Ann Catherine Lloyd."

" In consideration of the legacies of five thousand dollars to my daughter, Ann Catherine Lloyd, and five thousand dollars to my daughter, Mary Ellen Lloyd, directed by this codicil to be paid by my son Edward Lloyd out of his part of my estate, and for and in consideration and full payment to him of whatever sums I may owe him at the time of my death either on bond, note or open account, I do hereby give and devise to my son, Edward Lloyd, his heirs and assigns, my farm called ' Hopewell,' composed of and containing all the land purchased by me of Richard Parrotts and Fayette Gibson, except such parts as are devised as parts of ' Knightly ' farm to my daughter, Elizabeth Tayloe Winder, and such parts as are devised to my daughter, Sally Scott Lowndes, adjoining and contiguous to the land purchased of Edward Lloyd Nicholson, provided that if the legacies and sums due by me (as above expressed) to my son, Edward Lloyd, amount to more than the sum of fifteen thousand dollars, then the excess above the sum of fifteen thousand dollars shall be deemed and considered a debt due by me to my son,

Edward Lloyd, and shall be paid accordingly out of my whole estate."

Ann Catherine Lloyd married Franklin Buchanan, whom she survived, and lived until 1892, fifty-eight years after the death of her father.

The three sons of Governor Lloyd, who were made trustees under his will for their sisters, died as follows, to wit: James M. in 1847, Edward in 1861, and Daniel in 1875. By an order of the Circuit Court for Talbot County, passed May 21, 1863, on petition of Ann Buchanan, the appellee Edward Lloyd, a grandson of Governor Lloyd, was appointed her trustee in lieu of his uncle, Daniel Lloyd, the then surviving trustee who declined to further act as such.

In 1847 Daniel Lloyd sold his interest in "Davis Farm" to William Johnson, who in 1849 sold it to Daniel's brother Edward Lloyd, who thereafter held both Davis and Hopewell farms until his death in 1861, when he devised them with much other valuable property to his son, the appellee Edward Lloyd, whom he made his executor and residuary legatee and devisee.

Both Governor Lloyd and his son Edward left ample personalty to satisfy all debts and legacies but no part of the $5,000 left by the will or the $15,000 left by the codocil in trust for Ann Buchanan is shown by the proceedings to have been invested for her or paid to her, except the sum of $7,500, which Edward and Daniel Lloyd, the then surviving trustees, invested in 1847 in a farm called "The Rest," taking the deed for it in their names as surviving trustees for Ann Buchanan upon the limitations and for the uses declared in her father's will. It does not appear with entire certainty from what source the $7,500 invested in "The Rest" came, but the deed conveying that farm to the trustees recites the gift by Governor Lloyd's will of the Davis Farm and $5,000 to his sons in trust for Ann Buchanan with remainder to her children, the revocation by the codicil of the devise of the Davis Farm and the gift in lieu thereof of the $15,000 legacy in trust, and then states that "The Rest" had been purchased "*in virtue of the*

*last trust* so referred (reposed?) in them and for the purpose of investing a portion of the said trust fund." We therefore think that the $7,500 so invested should be regarded as having been appropriated to the $15,000 legacy given by the codicil. The record shows that " The Rest " came into possession of Ann Buchanan's children at her death and was sold by them at a handsome profit over its cost.

Edward Lloyd, the father of the appellee, continued until his death in 1861 to pay to Ann Buchanan the interest on the $12,500, uninvested balance of the two legacies of $15,000 and $5,000. After his death his son, the appellee Edward Lloyd, to whom he devised the Davis and Hopewell farms, continued to pay interest on the $12,500 to Ann Buchanan until her death in 1892 and after that he paid the interest to her children until August, 1895. Edward Lloyd, the appellee, also paid as hereinafter mentioned to certain of the children of Ann Buchanan, on account of the principal of the $12,500, sums amounting in the aggregate to $4,125.20.

The bill, which was filed on June 30, 1897, against the appellee Edward Lloyd and his grantees of Davis and Hopewell farms, asks for an accounting by him in respect to the two legacies of $15,000 and $5,000, and that the balance ascertained to be due thereon may, so far as it is due on the $15,000 legacy, be declared to be a lien and charge upon the Davis and Hopewell farms.

The appellees in their answers deny the right of the appellants to relief and contend that under the true construction of the will and codicil neither of the legacies was charged upon the land, and further contend that the $15,000 legacy was given for the life of Mrs. Buchanan only and that her children have no interest in it. The appellees, other than Edward Lloyd, also set up the defences of limitation and laches. The first question presented by the record is whether the $15,000 legacy given by the codicil was intended only for the use of Mrs. Buchanan for life, or was to go at her death to her children in the same manner that the $5,000 legacy

given by the will went and the Davis farm, in lieu of
which the $15,000 legacy was given, would have gone
under the terms of the will if there had been no codicil.

We think that the remainder in the $15,000 legacy
after Mrs. Buchanan's death was intended to go to her
children and that the testator in the part of the codicil
now under consideration when he spoke of his daughter
Ann, both in revoking the devise of the Davis farm and
in giving the $15,000 legacy, in lieu of the farm, used
her name in a representative sense and meant thereby
Ann and her children, and that he intended merely to
change the subject-matter of the provision made for
them and did not intend to deprive the children of their
participation in such provision.   He repeatedly, both in
the will and the codicil, used the names of his several
daughters in this representative sense when speaking
of the disposition of his property.   In the 5th clause
of the will he refers to certain land as " hereinafter
devised to my daughter Mary Ellen Lloyd," in the 5th
clause of the codicil he describes other land as that
" which in my will is devised to my daughter Ann
Catherine," and in the 6th clause of the codicil he ex-
cepts from the devise of Hopewell " such parts as are
devised as part of Knightly farm to my daughter Eliza-
beth Tayloe Winder, and such parts as are devised to
my daughter Sally Scott Lowndes," when in fact none
of the parcels of land so designated were devised to the
daughters but they were in each case devised to trustees
for the benefit of the daughter for her life only and the
remainder was devised directly to her children.   Again
in the tenth clause of the will he gives to the surviving
husbands, of such of his daughters as may leave no issue,
for their respective lives, " all of the said property real
and personal hereinbefore given to his, her or their
deceased wives respectively " when in fact no property
had been given to the daughters, except a few chattels,
other than equitable life estates which of course termi-
nated at their death.   The surviving husbands would
have taken nothing under this devise unless the testator
in describing the subject-matter of the gift used the

word " daughters " in a representative sense and meant thereby daughters and their children. It is by the use of the name of Ann Catherine in this representative sense in the codicil that the devise by the will of the remainder in the Davis farm to her children is revoked. There is no express reservation of it.

The intention of the testator to give to the children of his daughter Ann the remainder after her life in the legacy of $15,000 made by the codicil is further evidenced by the fact that he gave the legacy expressly in lieu of the Davis farm which had been by the will devoted to the benefit of Ann and her children and which constituted the main provision made for their support. It is unreasonable to suppose, in the absence of express provisions in the codicil revoking the devise of the remainder in the Davis farm to Ann's children, that the testator intended to deprive her children of the provision which he had made for them by his will upon terms precisely similar to that made for the children of his other daughters. The will and the codicil must be construed together and what is plainly given by the will is not to be revoked or withdrawn by doubtful or ambiguous expressions used in the codicil. *Buchanan* v. *Lloyd*, 64 Md. 310, 311.

It was strongly contended by the counsel for the appellees that the decision of this Court in *Buchanan* v. *Lloyd, supra,* was conclusive of the present case in their favor, but we do not so understand that decision. The Court there stated at the beginning of the opinion that the only question then presented for its consideration was the true construction of the 2nd clause of the codicil by which a legacy of $5,000 and certain slaves were given to two of the testator's sons in trust " agreeably with the provisions of my said will (in addition to the $5,000 devised in my said will) " . . . " for the use and benefit of my daughter Elizabeth Tayloe Winder." It was claimed in that case that the reference in the codicil to the provisions of the will and the legacy therein given for the benefit of Mrs. Winder for life with remainder to her children, indicated an intention on the part of the

testator to also give to Mrs. Winder's children an estate in remainder after her death in the $5,000, given in trust for her benefit by the codicil, although no mention of the children was made in the codicil, but the Court held that the terms of that clause of the codicil were not sufficient to give an interest in the legacy to the children. They rested their decision largely upon the fact that to hold otherwise would, in the absence of plain words expressive of any such intent, give to the 2nd clause of the codicil the effect of curtailing the residuary clause of the will of the subject-matter of its operation. No such difficulty exists in this case for the $15,000 legacy given by the codicil is not payable out of the residue of the estate to the derogation of the residuary legatees, but is required to be paid by the sons Edward and Daniel, to each of whom a farm is at the same time expressly given out of which to pay his portion of the legacy. The provisions of the codicil in reference to Mrs. Winder did not by revoking any part of the will deprive her children of the devise made to them and then make a new gift in lieu of the revoked devise. The legacy of $5,000 given for her use by the codicil was purely an additional gift to her and was unconnected with the general scheme of the will.

There is no such similarity between the clause of the codicil construed in the case in 64 Md. and the portions of the same instrument now under consideration as to make of that case a precedent for the determination of this one.

The next question to be determined is to what extent, if at all, are the legacies of $5,000 given by the will and $15,000 given by the codicil to be treated as having been charged upon the " Davis " and " Hopewell " farms.

Legacies are primarily payable out of the personal estate of the testator and will not be considered charges upon the real estate unless the intention of the testator to make the charge is either expressly declared or may be fairly inferred from the will. In the absence of a positive direction to charge legacies upon the real estate, various expressions in a will have been held sufficient

to establish an intention to create the charge. In *Kemp* v. *McPherson*, 7 H. & J. 320, where the devise of the farm was to the son, " he paying to my other children the sums " which were given to them, it was held that the legacies were a charge upon the land in the hands of either the devisee or the purchaser from him. In *Spence* v. *Robins*, 6 G. & J. 507, the real estate was devised to the son, " on paying three dollars per acre " to the sisters; in *Luckett* v. *White*, 10 G. & J. 480, the devise was to the son, " he paying his younger brother one hundred pounds "; in *Ogle* v. *Tayloe*, 49 Md. 175, the sons to whom a remainder in lands and personal property was devised were directed to pay a legacy, " upon their coming into possession of the property "; and in *Crawford* v. *Severson*, 5 Gill 443, the testator gave a farm to each of his two sons and gave $1,000 to his daughters, $600 of which was to be paid by one son and $400 by the other, " on his attaining full possession." In all of these cases the legacies were held to have been charged upon the land. The Court in *Owens* v. *Claytor*, 56 Md. 129, intimates that the case of *Crawford* v. *Severson, supra,* goes to the limit of the doctrine involved in its decision but they do not overrule the case or hold it to have been erroneously decided.

There is nothing in the will in the present case indicating that the testator intended the legacy of $5,000 given by the body of the will in trust for Mrs. Buchanan and her children to be charged upon any real estate. We are, however, of the opinion that the language used in the codicil, and already quoted by us, connecting the legacy of $15,000 therein directed to be paid by the sons Edward and Daniel with the devise to them of the Davis and Hopewell farms brings this case well within the scope of those last cited, and that the testator intended to charge the two farms with the payment of the $15,000 in the proportions mentioned by him.

He knew that this $15,000 would not be payable like the other legacies of his will out of his personal estate by his executors, and he is presumed to have known that his real estate was not liable for its payment, and when

he directed his two sons to pay it and then in express
terms devised these two farms to them " in considera-
tion of the payment," it is evident that he was provid-
ing the means of making the payment and that he in-
tended the legacy to be not a mere charge upon the
devisees personally but also a charge upon the two
farms.

Not only is the construction of the codicil, which
holds this legacy to be charged upon the farms, sup-
ported by the language of that instrument but the
scheme of disposing of his estate adopted by the testator
in which he selected real estate as the main portion of
the property devoted to the use of each daughter and
her children, makes it most natural to suppose that,
when he revoked the entire devise of real estate which
he had made for Ann and her children and gave them a
legacy in lieu of the devise, he would afford them the
protection of a charge upon land for the legacy, at least
until it should be " invested in some safe fund."

The will and codicil were duly admitted to probate
and recorded in the office of the register of wills of
Talbot County where the farms lie and the public were
thus given that constructive notice of their contents
which it is the purpose of the registry laws to effect.
The charge therefore followed the lands into the hands
of the appellees and remains a lien thereon unless some
subsequent event has released it or estopped the appel-
lants from asserting their claim.

We do not regard the defences of limitations and
laches or either of them as applicable to this case.    The
right of the appellants who are remaindermen to the
possession of the legacies did not accrue until the death
of the life tenant in 1892.    Even after their title to the
legacies had thus ripened the appellee Edward Lloyd ·
continued to pay them interest down to August, 1895.
None of the appellees, except Edward Lloyd who does
not plead limitations, claim title under deeds made
twenty years prior to the institution of this suit.    The
mortgage of the Davis farm to the appellee Hardcastle,
made in 1891, appears to have been a renewal of a

former mortgage made in 1871, but he was never in possession of the land and cannot from the standpoint of his mortgage plead limitations against the prior lien of the appellants which was kept alive by the payment of interest by the mortgagor in possession down to 1895. *Brown* v. *Hardcastle,* 63 Md. 489.

An almost unprecedented time did indeed elapse between the death of Governor Lloyd and the institution of this suit, but that was due to the fact that the equitable life tenant survived the testator for nearly sixty years. There has been no such delay on the part of the appellants in asserting their rights as to deprive them of their title to relief on the ground of laches.

It appears from the record that, since the death of Mrs. Buchanan, the appellee Edward Lloyd has paid to each of her two daughters, Sallie E. Screven and Elizabeth F. Sullivan, the sum of $1,562.60, being her full one-eighth share of the $12,500 then remaining due of the two legacies of $15,000 and $5,000, and has also paid to Ellen B. Screven, another daughter, $1,000 on account of her one-eighth share of such balance. These payments to Mrs. Sullivan and Sallie E. Screven, having been in full of their shares of the balance on the two legacies, must be credited on the several legacies in proportion to the sums respectively due on them at the time of the payment, *i. e.* three-fifths on the $15,000 legacy and two-fifths on the $5,000. The $1,000 paid on account to Ellen B. Screven should, by analogy to the rules laid down for the appropriation of payments in *Frazier* v. *Lanahan,* 71 Md. 133, be credited on the $15,000 legacy as the most burdensome obligation, being a lien upon the land to the extent of her full share of the balance due thereon and what remains of the $1,000 should be credited on the other legacy. We have already said that the $7,500 invested in " The Rest " should be credited upon the $15,000 legacy.

The appellants are entitled to a first lien or charge upon the Davis farm to the extent of two-thirds and upon the Hopewell farm to the extent of one-third of the balance remaining unpaid of the $15,000 legacy with

interest, after crediting it with the several payments with which we have said that it is entitled to be credited and, in default of payment of the balances so ascertained to remain charged upon said farms or either of them, the appellants are entitled to a sale of the farm or farms so in default.

The appellants are also entitled to a decree against the appellee Edward Lloyd for such balance as shall appear to be due upon the $5,000 legacy, after crediting it with the payments with which we have said that it is entitled to be credited.

The decree of the Circuit Court will be reversed and the case remanded for further proceedings in accordance with this opinion.

*Decree reversed and cause remanded.*