BERTHA ANNA SCHLOTZHAUER ET AL. *v.* LENA KUMMER ET AL.

*Construction of Will—Intention of Testator—Fee Simple or Life Estate.*

Testator's intention must be sought, not through the isolation of a single paragraph, but through its collection from the four corners of the will, as together expressing the complete testamentary purpose.                                p. 586

The accepted technical meaning of terms ordinarily used in the creation of estates in real property must yield to whatever intention is made apparent by the language of the instrument, if giving effect to this intention be not in violation of some established rule or principle of law.                      p. 587

Although testator gave his farm to his wife in terms to hold "to her heirs and assigns forever," *held* that she took but a life estate, in view of subsequent paragraphs of the will, giving his wife a right to dispose of the property during her life, but subject to the condition that she pay specified sums to their children, and providing that, if she died without having disposed of it, the property should "fall to her legal heirs" and be divided among the children.                        pp. 587-589

If testator in one part of his will gives to a person an estate of inheritance in lands, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a life interest only, the prior gift is restricted accordingly.      p. 589

*Decided January 14th, 1926.*

Appeal from the Circuit Court for Talbot County, In Equity. (WICKES and KEATING, JJ.).

Bill for partition by Bertha Ann Schlotzhauer and others against Lena Kummer and others. From an order sustaining exceptions to an auditor's report distributing the proceeds of sale, and overruling exceptions to another auditor's report, said named complainant and others appeal. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Webster S. Blades,* with whom were *Charles J. Butler* and *Blades, Rosenfeld & Frederick* on the brief, for the appellant.

*Edward T. Miller* and *John C. North,* for the appellees.

PARKE, J., delivered the opinion of the Court.

John Henry Plugge died on November 9th, 1920, disposing by will of his property, which apparently consisted of a farm. He was survived by his wife, Catherine Plugge, and seven children and four grandchildren, who were the descendants of his son, Henrich Rudolph Plugge, who died in 1906. His widow died intestate on September 4th, 1921, and the farm was thereafter sold through proceedings in equity, and the proper distribution of the funds arising from this sale depends upon the construction to be given to the testator's will, which is the sole question raised on this appeal.

At the time of the execution of the will, three of his eleven children were dead without leaving any descendants, and the testator's widow and his seven living sons were the beneficiaries under his will, which gave nothing to his four grandchildren, Flossie Counsell, Lowery Plugge, Jerome Plugge and Helmot Plugge, who were the children of his dead son, Henrich Rudolph Plugge. The will was construed by the court below to have given an unincumbered estate in

fee simple to the widow; and the net proceeds of sale of the farm were accordingly held properly distributed in eight equal parts among the heirs at law of the widow, who were seven surviving children and the four grandchildren, who represented the one-eighth share of their father, Henrich Rudolph Plugge. The will which was so construed to give nothing to the children was, with only the formal parts omitted, of this form:

"First: All my just debts and funeral expenses shall be first fully paid .

"Second: I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to my beloved wife, Catherine Plugge, to have, to hold to her, my said wife and to her heirs and assigns forever.

"Third: My wife shall have the perfect right to dispose of the entire property at any time, but in case she should do so, she would be obliged to pay out to the below mentioned children each $1,000.

"1—Johann Edward Randolph Plugge,

"2—Louis Carl Windolph Plugge,

"3—Carl Otto Gunter Plugge,

"(Adolph Julius August Plugge did receive his share in Nebraska before i left that State.)

"4—Bertha Anna Hermine Schlotzhauer,

"5—Ida Emma Martha Plugge,

"6—Rosaline Debora Henrietta Plugge.

"Besides of this:

"Ida Emma Martha Plugge will receive for faithful services at home an extra Five Hundred Dollars ($500.00).

"Rosaline Debora Henrietta Plugge, also for faithful services at home Three Hundred Dollars ($300.00).

"I also will to my son Julius A. Adolph Plugge, in Nebraska extra One Hundred Dollars ($100.00) for a special gift to what he received before I left the State of Nebraska.

"In case my beloved wife should not want to sell the property but keep it 'till she dies, then she would not be obliged to pay out any money to her heirs before

her death. No matter how she may arrange matters at her convenience after her death the remainder will fall to her legal heirs in the following way:

"First of All: Ida Emma Martha Plugge will receive an extra Five Hundred Dollars ($500.00); and Rosaline Debora Henrietta Plugge an extra Three Hundred Dollars · ($300.00) for faithful services at home; Julius A. Adolp Plugge in Nebraska an extra One Hundred Dollars ($100.00), in addition to his share he received before my departure from the State of Nebraska.

"All what is left then after the subtraction of the above mentioned sums and my wife's funeral expenses shall be equally divided among the following mentioned children:

"1—Johann Edward Randolph Plugge,

"2—Louis Carl Windolph Plugge,

"3—Carl Otto Gunter Plugge,

"4—Bertha Anna Hermine Schlotzhauer,

"5—Ida Emma Martha Plugge,

"6—Rosaline Rebora Henrietta Plugge.

"My departed son, Henrich Rudolph Ernst Plugge, who died 24th of September, 1905, did receive his share out of the property in lifetime and consequently his heirs have no further claim.

"I nominate and appoint me said wife, Catherina Plugge, to be the executrix of this my last Will and Testament."

The reading of this will makes it plain that it was inartificially drawn, and that the testator sàt down to make it without the benefit of counsel; and, so, it is all the more imperative that if the intention of the testator be made clear by the words of the will it should be given effect, even if the technical words, which are ordinarily necessary to express that intent, have not been used. And this intention must be sought, not through the isolation of a single paragraph, but through its collection from the four corners of the will, as together expressing the complete testamentary purpose. And so controlling is intent that even in devises

the accepted technical meaning of terms ordinarily used in the creation of estates in real property must yield to whatever intention is made apparent by the language of the instrument, if giving effect to this intention be not in violation of some established rule or principle of law.

By the second paragraph of the will the testator unquestionably employed terms, which if considered apart from any other portion, indicated a purpose to devise his farm to his wife in fee simple; and she should be declared to have so held the land, unless the other provisions and expressions contained in the will indicate, with reasonable certainty, that it was the testator's intention to reduce the quantity of the estate given by this paragraph if standing alone. We are of the opinion that there are subsequent words and provisions which are sufficiently strong to cut down the first apparent devise in fee simple to a life interest, with a conditional power of sale to the life tenant.

The remaining provisions of the will, which contain the qualification of the estate first devised, follow the second paragraph, and begin with the word "Third," and, for the purpose of convenience, we shall treat all these provisions of the third and subsequent paragraphs as being in the third paragraph of the instrument. As everything the testator owned at the time of his death was apparently bequeathed and devised by the second paragraph of the will to his wife, there was nothing left to the testator to dispose of, if he had meant by the second paragraph to have given all his real and personal property absolutely to his wife. Consequently, when he granted to his wife by the third paragraph "the perfect right to dispose of the entire property at any time," he demonstrated that he had not intended to give her an absolute estate in his property, and that the exercise of the power conferred was to be during her lifetime, as he attached to the exercise of this power the condition that out of the proceeds received by her "she would be obliged to pay out" prescribed amounts, aggregating sixty-four hundred dollars, to certain named children. See *Buchanan v. Lloyd,* 88 Md. 642, 650, 652.

After having thus, at the beginning of the third paragraph, bestowed a conditional power to sell, during his wife's life, the same property which was the subject matter of the second paragraph, the testator next contemplated the possibility of his wife's not exercising this power during her life, as is manifested by the further provisions of the third paragraph. He declared "In case my beloved wife should not want to sell the property but keep it till she dies, then she would not be obliged to pay out any money to her heirs before her death. No matter how she may arrange matters at her convenience after her death, the remainder will fall to her legal heirs in the following way"; and then he provided for the payment of specific pecuniary legacies to certain preferred children; and the payment of his wife's funeral expenses, and the division of the residue among his six living children.

It is manifest from these provisions that no absolute interest in the personalty and no freehold estate of inheritance in the realty were meant to be given. The duration of the wife's enjoyment, and of her conditional power of sale, was for her life. *Benesch v. Clark,* 49 Md. 497. She had no other title to convey except in execution of the power granted her, and so, had no interest to assign or to convey other than for her life; and she could not dispose of the subject-matter by will. At her death, all her interest determined. The testator explicitly so declared when he wrote "No matter how she may arrange matters at her convenience after her death the remainder will fall to her legal heirs" in the way specified by his will. The opening conditional clause or sentence of the last quotation from the will referred to the failure of the wife to exercise the power conferred, and not to a sale of this estate of the wife. The power granted was to sell and convey an estate of inheritance, but the estate of the widow was a life estate.

No one can read the will without being convinced that the testator believed and intended that the general terms of the gift to his wife in the second paragraph were limited and

defined by the particular terms of the later provisions. These particular terms were not designed to create conditions, which are not a favorite of the law and will not be raised on indefinite language. Instead of operating to defeat or diminish, or of being repugnant to, an antecedent estate, the particular terms used were simply descriptive of the nature of the qualification intended by the testator to be annexed to the antecedent absolute estate given to the widow. The testator's meaning is emphasized by his statement in the will of his reasons for totally excluding the children of his dead son, Henrich Rudolph Ernst Plugge, from any share in his estate, and for giving another son but one hundred dollars. The general intent of the testator is so obvious that to hold the wife took an absolute estate of inheritance in the farm would indisputably bring about a destruction of the whole testamentary design.

If the second and third paragraphs of the will had been in irreconcilable conflict, the latter paragraph would prevail as the expression of the testator's subsequent intention, but this subordinate rule of construction need not be invoked, because the paramount rule is to seek the intention of the testator as found expressed in all the parts of the whole will, when considered together and contemplated as having all been in the mind of the testator at the time he wrote every separate provision. "Hence it is obvious that a will can seldom be rendered absolutely void by mere repugnancy; for instance, if a testator in one part of his will gives to a person an estate of inheritance in lands, or an absolute interest in personalty, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a life interest only, the prior gift is restricted accordingly." 1 *Jarman on Wills* (6th ed.), 436, 473; *Pattison v. Farley,* 130 Md. 408, 409; *Bradford v. Mackenzie,* 131 Md. 330, 332, 334; 1 *Tiffany on Real Property* (2nd ed.), sec. 32, pp. 76, 77.

As our conclusion is that the farm, upon the death of the widow, intestate, did not descend to and vest in her heirs.

at law, but passed according to the terms of the testator's will, the lower court was in error in not ratifying auditor's report No. 1, which so distributed the funds, and its decree will have to be reversed and the case remanded for further proceedings in accordance with this opinion.

> *Decree reversed, and cause remanded, with costs to appellants.*