SALLY M. BUCHANAN, ELIZABETH T. PENNINGTON, MARY WINDER, and WILLIAM SYDNEY WINDER. *vs.* EDWARD LLOYD, TRUSTEE.

*Construction of a Will—Codicil—Added legacy—Costs.*

By the sixth clause of his will made in 1829, a testator devised and bequeathed to his three sons, Edward, James, and Daniel, and the survivors or survivor of them, and the heirs, &c., of the survivor, *for and during the life* of his daughter, Elizabeth Tayloe Winder, "and no longer," his farm in Talbot County, called Knightly, and also the sum of $5000, in special trust and confidence that they should collect and receive the profits and interest thereof, and pay the same over to her, for her sole use and benefit, during her natural life, whose receipts in writing therefor, should be a sufficient discharge to the said trustees, her coverture notwithstanding; *and from and after her death*, he devised and bequeathed the said farm and money before given in trust for the benefit of his said daughter, directly, and not in trust, to her child or children, if any, their heirs, &c., equally to be divided between them, share and share alike. By a codicil made in 1834, the testator bequeathed to his two sons, Edward and James, "in special trust *agreeably with the provisions of my said will*, the sum of $5000, (in addition to the $5000, devised in my said will;) also all the servants or slaves and other articles held by me under a bill of sale from Edward S. Winder, and all servants or slaves of mine which may be in the service or possession of the said Edward S. Winder, or living on the farm, called Knightly, at the time of my death, for the use and benefit of my daughter, Elizabeth Tayloe Winder." HELD:

That the additional bequest of $5000, and of the proceeds of the sale of the slaves mentioned in the codicil, was for the life of Mrs. Winder only, without remainder to her children, and passed at her death to the three sons of the testator, under the residuary clause of his will.

Whenever it is rendered necessary or proper, for determining the rights of parties, that the opinion of the Court should be taken as to the proper construction of a will, and the necessity for such resort has been occasioned by the doubtful or ambiguous terms

employed by the testator, it is proper to award the costs against the residuary fund of the estate.

APPEAL from the Circuit Court for Talbot County, in Equity.

This appeal was taken from a *pro forma* order of the Circuit Court, sitting in equity, passed on the 30th of May, 1885, in accordance with an agreement of counsel, sustaining the exceptions filed by the appellee to " Account A, No. 1," and rejecting the said account, and overruling the exceptions filed by the appellants to " Account C, No. 3," and ratifying said account. To Account A, No. 1, the appellee objected, because he was therein charged with the sum of five thousand dollars under the codicil to the will of Governor Lloyd, and with the sum of two thousand one hundred and seventeen dollars and forty-seven cents, the value of servants and slaves mentioned in said codicil, aggregating the sum of seven thousand one hundred and seventeen dollars and forty-seven cents, which were improperly distributed, with other moneys, to the children of Elizabeth Tayloe Winder. To Account C, No. 3, the appellants objected, because the trustee was not charged therein with the sums of five thousand dollars, and two thousand one hundred and seventeen dollars and forty-seven cents, claimed to be due the children of Elizabeth T. Winder under the codicil to the will of Governor Edward Lloyd. The case is further stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, RITCHIE, and BRYAN, J.

*John N. Steele,* and *I. Nevett Steele,* for the appellants.

*Philip Frank Thomas,* and *S. Teackle Wallis,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

In this case the only question presented is one of construction, and that is as to the effect of a certain clause in the codicil made to the will of the late Governor Edward Lloyd of this State.

The will was made in 1829, the codicil in 1834, and the testator died in the last mentioned year, leaving seven children, three sons and four daughters, to whom he devised and bequeathed, after making provision for his widow, a large and valuable estate, both real and personal. To the sons he gave their portions absolutely, but to the daughters their portions he gave in trust.

By the sixth clause of his will, the testator devised and bequeathed to his three sons, Edward, James M., and Daniel Lloyd, and the survivors or survivor of them, and the heirs, &c., of the survivor, *for and during the life* of his daughter, Elizabeth Tayloe Winder, "and no longer," his farm in Talbot County, called Knightly, on which she then resided, and also the sum of $5000, in special trust and confidence that they should collect and receive the profits and interest thereof, and pay the same over to her, for her sole use and benefit, during her natural life, whose receipts in writing therefor should be a sufficient discharge to the said trustees, her coverture notwithstanding ; *and from and after her death,* he devised and bequeathed the said farm and money, before given in trust for the benefit of his said daughter, directly, and not in trust, to her child or children, if any, their heirs, &c., equally to be divided between them, share and share alike.

The provisions made by the testator in his will for his other daughters were on exactly similar trusts as that in behalf of Mrs. Winder, being for their respective lives only, with limitations over directly to their children. And after various bequests of his personal estate, the testator, by a residuary clause in his will, bequeathed all the residue of his personal estate to his three sons, equally to be divided between them, share and share alike.

By the codicil, the testator, after ratifying and confirming the previous will in all its parts, except so far as the same should be revoked or altered by the codicil, in making various alterations of and additions to the devises and bequests in the will contained, bequeathed to his two sons Edward and James M. Lloyd, "in special trust, *agreeably with the provisions of my said will,* the sum of $5000, (in addition to the $5000 devised in my said will;) also all the servants or slaves and other articles held by me under a bill of sale from Edward S. Winder, and all servants or slaves of mine which may be in the service or possession of said Edward S. Winder, or living on the farm called Knightly at the time of my death, for the use and benefit of my daughter, Elizabeth Tayloe Winder."

Mrs. Winder is dead, and the appellants in this case are her children; and their contention is, that the $5000, and the proceeds of the sale of the slaves mentioned in the clause of the codicil just quoted, passed to them, upon the death of their mother, in precisely the same manner as did the property devised and bequeathed to them by the will; while on the part of the appellee it is contended, that the additional bequest of money and slaves made to Mrs. Winder by the codicil, was for her life only, without remainder to her children, and that, subject to the bequest for the life of Mrs. Winder, such property passed to the three sons of the testator under the residuary clause of the will. Which of these contentions is correct is the only question presented on this appeal.

The terms of the will and its various provisions are plain and explicit enough; but the codicil was not so skilfully drawn, and is greatly wanting in clear and unambiguous terms to express with clearness and precision the real meaning of the testator. By the will, the devise of the realty, and bequest of the money, to the trustees, were for the life of Mrs. Winder, *and no longer,* with power to collect the profits and interest, and to pay the same over

Buchanan, *et al. vs.* Lloyd, Trustee.

to her during her life.  From and after her death, the property, both .real and money, was devised and bequeathed directly and absolutely to the children, without the intervention of trustees; the children taking the legal estate, and not, as in the case of the mother, a mere equitable estate in the property devised and bequeathed. From the death of the mother the trust, in respect to this particular property, terminated, except as to the resulting liability on the part of the trustees to account; and from that moment the children became entitled to receive the property as legal owners under the will.  But by the codicil, the property intended as an additional gift to Mrs. Winder was bequeathed, not jointly to the three sons as trustees, but to two of them only, "in special trust, agreeably with the provisions of my said will;" that is to say, upon the same trust as that specified in the will, namely, to hold for the life of Mrs. Winder, and no longer; and to collect and pay over to her the income and profits during her life.  No reference whatever is made to the children of Mrs. Winder in this bequest, nor is there any express limitation over of the property bequeathed by the codicil, after the death of Mrs. Winder; and the question is, whether, upon the will and codicil together, there is any such manifest intention, by implication or otherwise, that the property thus bequeathed by the codicil for the life of Mrs. Winder, should go to her children at her death, as in the preceding devise by the will, and thus withdraw the property from the operation of the residuary clause of the will?   Of course, it is very clear that if there be no such limitation over in favor of the children, the property passed under the residuary clause; for it is too obvious to admit of serious question that Mrs. Winder did not take more than an equitable life estate in the property given her by this particular clause of the codicil.

It is certainly a well settled principle that the will and codicil are to be construed together as one instrument, and

are to be reconciled as far as practicable. But what is plainly given by the will is not to be revoked or withdrawn by doubtful or ambiguous expressions employed in the codicil. Here the effort is, by construction, and in total absence of plain words expressive of any such intention, to give an effect and operation to a clause in the codicil whereby the residuary clause of the will must be curtailed of the subject-matter of its operation. As said by Sir Wm. Grant in *Holder vs. Howell*, 8 *Ves.*, 97, when considering a question somewhat of an analogous character to the present, we may have a very strong conjecture as to the objects and purposes of the testator in making the bequest in question, and as to what he may have supposed to be its effect and operation; but the question is, whether upon that conjecture we can supply, with any degree of certainty, the limitation over to the children of Mrs. Winder, such as we find expressed in the devise contained in the will? We have carefully considered the various provisions of both will and codicil, so far as they could in any way bear upon the construction of the clause of the codicil in question; and we are constrained to say, as was said by the learned Judge in the case just referred to, that whatever conjecture we may have, there are no materials in the codicil, or in the will and codicil together, of which we can predicate a limitation over to the children of Mrs. Winder. The terms " agreeably with the provisions of my said will," following the words " in special trust," have reference exclusively to the trust and the manner of its execution by the trustees, as declared and prescribed in the clause of the will; and not to any separate bequest over of the legal estate. Without this reference to the will, neither the duration nor the terms of the trust would have been declared by the clause in the codicil, and it might, in such state of case, have been plausibly contended that Mrs. Winder would take under that clause the entire equitable estate in the money and slaves bequeathed, and not a

mere life estate. That, however, was not what the testator intended by this clause of the codicil. It is quite true, as a general principle of construction, that *added* legacies are subject to the same conditions and restrictions as the legacies to which they are added; but that general principle can have no application to this case, in support of the contention that the additional bequest in the codicil should be taken with the same limitation over to the children, as that expressed in the clause of the will referred to. In the case of *Mann vs. Fuller, Kay,* 624, 626, it was said by Vice-Chancellor WOOD, adopting a principle of construction enunciated by Lord Justice TURNER, in the case of *More's Trust,* 10 *Hare,* 171, that the cases upon this subject have not gone further than this: "That where the subject of the first gift is given absolutely to the party or is made defeasible, the second or additional gift has been held to be given upon similar terms; for example, if the former gift were absolute and free of legacy duty, the additional gift has been held to have all the same incidents; so, if the former gift is to be lost on a certain event, the additional gift is to be defeated on the same condition. But in no case, says the Vice-Chancellor, "has it been held that the latter gift is to go to the parties entitled under the *subsequent limitations* of the former gift." And so appears to be the whole current of decisions upon the subject of the construction of *additional* bequests, whether such additional bequests be given by will or codicil, in the absence of express limitation over. We must therefore affirm the order appealed from, and remand the cause.

*Order affirmed, and*
*cause remanded.*

(Decided 20th November, 1885.)


This Court having directed by its order accompanying the aforegoing opinion, that the costs should "be paid out

Buchanan, *et al. vs.* Lloyd, Trustee.

of the fund," a petition was filed by the appellants, on the refusal of the appellee to pay their costs, asking the Court to declare whether or not it meant by said order that the costs should be paid out of the fund of $7117.47,—the fund in controversy—in the hands of the appellee. On said petition Chief Judge ALVEY delivered the opinion of the Court as follows:

By the decree of this Court the cost was adjudged to be paid out of the fund. There is now a question raised as to what fund is to bear this cost, all the funds of the estate, except that in controversy, having been paid out to the parties entitled thereto. In directing the cost to be paid *out of the fund*, the fund intended to be charged was that in controversy, and none other; that fund being the only one, by the appeal, that was made subject to the decree of this Court.

The appeal was of an amicable nature, having been taken from a *pro forma* order of the Court below, entered by agreement of the parties. The cause of contention, as will appear by the opinion of the Court heretofore filed, was the question as to what was the proper legal construction of a clause in the codicil to the will of the testator, and there was at least color for the contention of the appellants; and such being the case, it was deemed proper by the respective parties that the case should at once be brought to this Court for final determination. The appellants failing in their contention, the fund was declared to have passed under the residuary clause of the will. Under the circumstances of this case, the rule in regard to cost would seem to be well established. That rule is, that whenever it is rendered necessary or proper, for determining the rights of parties, that the opinion of the Court should be taken as to the proper construction of the will, and the necessity for such resort has been occasioned by the doubtful or ambiguous terms employed

by the testator, it is proper to award the cost against the residuary fund of the estate, (*Wilson vs. Brownsmith*, 9 *Ves.*, 180; *Ripley vs. Moysey*, 1 *Keen*, 578; *Jolliffe vs. East*, 3 *Bro. C. C.*, 25;) and it was in view of the ambiguous nature of the clause of the codicil involved in this case, that the cost was awarded to be paid out of the fund.

(Decided 7th April, 1886.)