Josiah G. Bridge, executor, *vs.* Philinda Bridge.

Middlesex.   February 2, 1888. — March 3, 1888.

Present: Morton, C. J., Devens, C. Allen, Holmes, & Knowlton, JJ.

*Will — Annuity — Capital and Income — Executor — Probate Court —*
*Appeal — Master.*

A testator gave to his wife an annuity of $400, "if the income of my estate not herein bequeathed to her or to the payment of said debts and funeral expenses shall amount to that sum," and left her the use of "the house in which we now live" for life, but requested his executor to furnish her with a suitable house elsewhere if she desired. The widow continued to live in the house, and the executor deducted from the gross income, applicable to the payment of the annuity, the amount paid out for repairs, taxes, water rates, insurance, and interest on a mortgage on the house. *Held,* on an appeal from a decree of the Probate Court allowing the executor's account, that the annuity was to be paid out of net income, and that the deductions were rightly made.

General expenses of administration incurred for the benefit of the whole estate are chargeable to capital, and not to income.

If a master on such an appeal declines to revise the compensation allowed to the executor, his report will be recommitted if the appellant so desires.

A stable in the rear of the house occupied by the testator, which was used by him in connection with it, was let by the executor, and the widow claimed the rent. The master did not set forth very clearly the connection between the house and the stable, nor whether he excluded the claim because the words "house in which we now live" could not include a stable, or on a finding that it was not so connected with the house as to pass with it. *Held,* that the testator's use did not necessarily establish that the quoted words included the stable, and that it could not be said that the master was wrong.

Appeal, by Philinda Bridge, from a decree of the Probate Court, allowing the accounts of the surviving executor of the will of her husband, Abel E. Bridge. The will contained the following provisions, which alone are material:

"I give and bequeath to my wife Philinda four hundred dol-

lars a year during her natural life if the income of my estate not herein bequeathed to her or to the payment of said debts and funeral expenses shall amount to that sum.

" I give and bequeath to my said wife Philinda the use of the house in which we now live to be occupied by her during her natural life unless she shall otherwise elect. If she should desire to live elsewhere I request my executors to furnish her a dwelling-house such as will be suitable to her welfare and comfort. . . .

" I hereby direct my said executors to use any income of my said estate and any accumulation of personal property in their hands in excess of the legacies and provisions hereinbefore made in paying and cancelling the mortgages so long as any exist, on my real estate. When my said wife Philinda shall have deceased I authorize my said executors and empower them to sell and convey by public or private sale the part of my said real estate then remaining unsold whenever after said decease of my wife such sale can be made to advantage. And I direct my said executors on and after the decease of my said wife to pay to my son Josiah G. Bridge the income of one third of my entire estate then remaining till such time as such one third part can be set off or paid to him which I direct to be done as soon after the death of my wife as may be.

" Out of the balance of said estate after my son Josiah has received one third thereof as above provided I direct that two thousand dollars shall be held in trust by my said executors and so invested as to draw a reasonable and safe income which I direct my said executors to pay yearly to my daughter Emily, and that one thousand dollars out of said balance be similarly invested and the income thereof paid yearly to my daughter Vesta by said executors and trustees thereof hereby duly appointed for the purpose. . . .

" At the death of my said wife, excepting said trusts and said provision for the heirs of said Emily, all the rest and residue of said estate I give and bequeath to my son Josiah G. and to his heirs.

"I also hereby make and create the said Josiah G. Bridge and the said Thomas B. Harris trustees of that part of said estate not herein disposed of by legacies, during the life of my wife

Philinda, so far as it may be necessary in carrying out the provisions of this will."

The case was referred to a master, who reported, in substance, that Philinda Bridge continued to live after the death of the testator in the same part of a double house, owned by him, which they had previously occupied; that the executor, before paying to her the $400 a year given her by the will, deducted from the gross income of the estate, and was allowed in his account, amounts paid out for repairs, taxes, water rates, insurance, and interest on a mortgage on the house; that the executor further deducted from the gross income, and was allowed in his account, the charges for the settlement of the estate, his commissions on collections, his attendance at court, and disbursements to counsel; and that from the net income thus produced the executor paid to the widow a sum less than $400 a year.

The master also stated in his report, that the appellant contended that the executor had charged the estate with commissions upon money collected from himself, and for his services in settling the estate, for attendance upon court, and for payments to counsel, which should not have been allowed; but " these matters seem to me so much within the better knowledge and discretion of the judge of the Probate Court that I decline to revise them."

The report of the master then proceeded as follows: " The appellant further claims, that, by the above quoted clause of the will which gives her the use of the house, she is entitled to the use of the stable within its curtilage. This stable, with an annexed hennery, is in the rear of the block of two houses, of which one is the same mentioned in the will, for the widow. It was used by the testator, from the time of its erection to the date of his death, in connection with the house occupied by himself and the appellant. The houses front on Alder Street and the stable fronts on Beach Street, the house occupied by the appellant being the one at the corner of the two streets; the space between the rear entrance of this house and the stable and Beach Street is concreted. The other house has always been occupied by a tenant, and its lot has no entrance to the stable. The two houses have no entrance in common, and their respective grounds are separated by a high, close fence, which runs to the stable.

The lot on which the buildings stand extends about one hundred feet on Alder Street and one hundred and thirty feet on Beach Street. The executor has rented the stable, and during the time covered by his accounts has collected therefor two hundred and eleven and fifty one-hundredths dollars ($211.50). This amount the appellant claims should have been paid to her. As I do not consider that the devise of the use of the house carries with it the use of the stable, I disallowed this claim of the appellant."

The master further reported, that the net income as found by the Probate Court should be revised by adding thereto the deductions made by the executor out of the gross income, and that the executor should pay to the appellant the balance due to her upon her annuity.

Hearing upon the master's report, and exceptions of both parties thereto, before a single justice, who ordered the decree of the Probate Court to be affirmed, and the case to be recommitted; and this appeal was taken to the full court.

*E. A. Alger*, for the executor.

*C. Abbott*, for the appellant.

HOLMES, J. This is an appeal by the widow of Abel E. Bridge from a decree of the Probate Court allowing the accounts of her husband's executor.

1. The first question arises under the following clause of the will: " I give and bequeath to my wife Philinda four hundred dollars a year during her natural life if the income of my estate not herein bequeathed to her or to the payment of said debts and funeral expenses shall amount to that sum." The testator also gives her the use of his house for life, or, if she should desire to live elsewhere, requests his executor to furnish her a suitable house. She has continued to live in his house, and the executor deducts from the gross income applicable to payment of the four hundred dollars the amount paid out for repairs, taxes, water rates, insurance, and interest on a mortgage on the house. This is plainly right; the gift is of four hundred dollars a year, if the net income amounts to that sum. The charges mentioned all fall on income, not on capital, unless the will directs otherwise. *Watts* v. *Howard*, 7 Met. 478, 482. *Parsons* v. *Winslow*, 16 Mass. 361, 368. *Sohier* v. *Eldredge*, 103 Mass. 345, 354. *Plympton* v. *Boston Dispensary*, 106 Mass. 544, 547. We see nothing in this

will to indicate that the usual rule is not to be applied. The case is not like *Smith* v. *Fellows*, 131 Mass. 20, where a gift of "one thousand dollars per year during her lifetime, the same to be paid from the income of my property," was held to be an absolute gift of the sum named, payable out of principal if necessary, and therefore payable out óf gross income. The gift here is payable only from income, and the income available must be ascertained in the ordinary way.

2. The general expenses of administration should fall upon the corpus of the estate, as they are incurred for the benefit of the whole estate. See *Sawyer* v. *Baldwin*, 20 Pick. 378, 388 ; *Brown* v. *Kelsey*, 2 Cush. 243, 249. The decree of the Probate Court erred in charging them to income.

3. There is no doubt that, where an executor's final account comes to this court by appeal, the compensation allowed him is subject to revision, as well as the other items. *Blake* v. *Pegram*, 109 Mass. 541. Pub. Sts. c. 144, § 7 ; c. 156, §§ 5, 6, 17. The master having declined to revise this matter, the report must be recommitted if the appellant desires, upon this single point. If it be true, which does not appear, that a commission is allowed the executor for collecting his own debt, the allowance is improper. But possibly, if such an allowance was made, it was considered in determining the other compensation allowed, and it may be thought proper to increase that by a corresponding amount, leaving the total compensation the same. There is nothing in the facts now appearing to indicate that the allowances for attending court and for counsel fees were improper. Pub. Sts. c. 144, § 7. *Edwards* v. *Ela*, 5 Allen, 87. *Forward* v. *Forward*, 6 Allen, 494. *Blake* v. *Pegram, ubi supra*. *Turnbull* v. *Pomeroy*, 140 Mass. 117, 118.

4. There is a stable in the rear of the house occupied by the testator, which was used by the testator in connection with the house. The executor has let it and the appellant claims the rent. The mode of use in the testator's lifetime does not necessarily establish that the stable is included in the words " house in which we now live." 2 Wms. Saund. 401, n. 2. The connection between the house and stable is not set forth very clearly, nor does it appear very clearly whether the master excluded the allowance of the rent for the stable on the ground that, as matter

of construction, the words could not include a stable, or on a finding that the stable was not so connected with the house as to pass with it. On the facts appearing, we cannot say that the master and judge of probate were wrong. It is unnecessary to consider whether in any case the widow would have had any other right than personally to occupy the stable if so minded.

*Decree accordingly.*