LAURA S. GRIEVES, CLARENCE J. GRIEVES, Exec-
UTORS OF THE LAST WILL AND TESTAMENT OF EDWARD
W. GRIEVES, DECEASED, LAURA S. GRIEVES AND
CLARENCE J. GRIEVES,

*vs.*

HANNAH L. RAMSEY GRIEVES, EDWIN WELDIN
RAMSEY GRIEVES, AN INFANT.

*Wills: Construction; repugnant clauses; codicils; mis-recitals;*
*"desire" as a mandatory or precatory word.*

If a testator in one part of his will gives an estate of inherit-
ance to one person, and in subsequent passages unequivocally
shows that he 'means the devisee or legatee to take a life estate
only, the prior gift is restrained accordingly.          p. 305

In cases of repugnancy, when two clauses can not stand to-
gether and have effect, that gift which is posterior in local posi-
tion shall prevail, the subsequent words being considered as
denoting a subsequent intention.                         p. 308

The disposition of a will will not be disturbed by an erro-
neous recital of its contents in a codicil, unless a design to
revoke or modify the disposition in the will can be fairly col-
lected from the whole instrument.                        p. 309

A will gave to the wife of the testator the right to dispose of
$8,000 by last will and testament; a codicil increased to $12,000
the amount which she was authorized to dispose of during her
life, or by last will and testament: *Held*, that this erroneous
recital did not have the effect of increasing the wife's powers.
                                                         p. 309

Before a different meaning may be given to the same word
as used in various parts of a will, it must be clear that such a
difference of meaning was the testator's intention.      p. 307

Where the word "desire" in all other parts of a will is used in
a sense clearly mandatory, it will not be given a sense merely
deprecatory in another part of the will in the absence of any-

thing to show that the word was there used with such different
intention.                                        pp. 307-308

The provisions in the third paragraph of the will (as set out
in the opinion of the Court) as to changes of investment, were
intended to give the beneficiaries, in addition to the unrestricted
use of the property, the right to change the investment in which
the fund was invested.                            p. 309

*Decided February 28th, 1918.*

*Appeal from the Circuit Court No. 2 of Baltimore City.*
(DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, PATTI-
SON, BRISCOE, URNER and STOCKBRIDGE, JJ.

*J. Purdon Wright* and *Charles Markell* (with whom was
*Roger W. Cull* on the brief), for the appellants.

*C. John Beeuwkes and Eli Frank* (with a brief by *Frank,*
*Emory & Beeuwkes*), for the appellees.

PATTISON, J., delivered the opinion of the Court.

Laura S. Grieves and Clarence J. Grieves, as executors of
Edward W. Grieves and as individuals, filed the bill in this
case against Hannah L. Ramsey Grieves and Edward Weldin
Ramsey Grieves, asking the Court to construe the will of the
said Edward W. Grieves and the codicil thereto, and deter-
mine the interests and powers of the persons named therein.

The testator, Edward W. Grieves, by the first paragraph
of his will gave to a cousin the sum of one thousand dollars,
and by the second paragraph thereof he gave and devised
unto his wife, the said Laura Simpers Grieves, his house on
Park Avenue, 'and the silver, paintings, furniture and fur-
nishings therein contained. The residue of his property he
disposed of by the third paragraph of his will, which is as
follows:

"3. The rest, residue and remainder of my property, real, personal and mixed, of every kind and description, and wheresoever the same may be situate, I desire to be divided into two equal parts—one portion thereof I give, devise and bequeath unto my son, Clarence J. Grieves; the other portion I give, devise and bequeath unto my wife, Laura Simpers Grieves, for and during the term of her natural life, with power to her to dispose of such portion thereof by will as she may see fit, not exceeding however, in value the amount of eight thousand dollars and from and immediately after the death of my said wife, I desire that such portion hereby left to her which shall not have been disposed of by will, shall vest in and become the absolute property of my son Clarence J. Grieves, his heirs and assigns; and it is my desire that all the property received from me by my son Clarence J. Grieves, either directly or otherwise through my said wife, shall pass to my grandson Edward Weldin Romsay Grieves, if living at the time of the death of my son Clarence J. Grieves; and should my said grandson not be living at the time of the death of my son Clarence J. Grieves and should he survive his stepmother Hannah Ramsay Grieves, then I desire that she shall have the life interest in such portion, and upon her death said property shall vest absolutely in the heirs, personal representatives and assigns of the said Edward Welding Ramsay Grieves, *per stirpes* and not *per capita.*

"(These provisions, however, as to my grandson and his stepmother shall not be deemed, in any manner, to restrict the proper use nor any change of investment of interest or the principal of said fund.)

"In dividing my estate between my wife and my son, I desire that the life insurance which is payable to my wife, shall not be in any manner considered as a portion of the amount distributed."

The codicil thereafter made by him is in the following language:

"I, Edward W. Grieves, of Baltimore City, State of Maryland, having heretofore made my last will and testament, dated December 5th, 1907, and desiring to make an alteration therein, do hereby make a codicil, in form and manner following, to wit:

"First. I desire that the sum of eight thousand ($8,000.00) dollars mentioned in the third paragraph of my said will, as the amount which my wife may dispose of, during her life, or by last will and testament, shall be increased to twelve thousand ($12,-000.00) dollars, with the same rights of disposal as therein mentioned.

"Second. I hereby ratify and confirm my said last will and testament, with all of its provisions, not inconsistent with this codicil."

The Court was asked by the bill to decide the three following questions, to wit:

"First. Whether the third paragraph of said last will and testament is to be construed as giving an absolute estate in one of the two portions into which the testator directs the rest, residue and remainder of his estate to be devised to his son Clarence J. Grieves, the whole of said paragraph after the words 'One portion thereof I give, devise and bequeath to my son Clarence J. Grieves,' applying only to the other portion of said rest, residue and remainder given, devised and bequeathed to the testator's wife, Laura Simpers Grieves, as therein directed, or whether the words 'All the property received from me by my son Clarence J. Grieves, either directly or otherwise through my said wife, shall pass to my grandson, etc.,' limit the devise and bequest of said one portion given to the son to a life estate in such portion.

"Second. Whether the power given to Laura Simpers Grieves by said last will and testament to dispose of eight thousand dollars of the portion of the testator's estate devised to her for life, as modified by said codicil, is a power to dispose of the same by will only, or whether the same is a power to dispose of the same during her life or by will.

"Third. Whether the parenthetical clause in the third paragraph of said will, namely '(These provisions, however, as to my grandson and his stepmother shall not be deemed, in any manner, to restrict the proper use nor any change of investment of interest or the principal of said fund),' apply to said fund of twelve thousand dollars, over which the said Laura Simpers Grieves has the power of disposition, or whether the same applies to the whole portion devised to her by the third paragraph of said will," and "whether the same is sufficient in law to give to the said Laura Simpers Grieves and Clarence J. Grieves the power to change investments of the principal fund referred to."

The Record discloses that the will of Edward W. Grieves was executed on the 5th day of December, 1907, and the codicil thereto on the 10th day of October, 1916; and that he died on the 12th day of February, 1917, survived by his widow, Laura S. Grieves; his son, Clarence J. Grieves; his son's wife, Hannah Ramsey Grieves, and his grandson, Edward W. R. Grieves, who, at that time, was sixteen years of age. The will was duly probated, and the widow and son qualified as executors. The Court below, after hearing upon bill, answer and testimony, decreed as follows:

"By the terms of the will and codicil in this case the testator divided his estate into two halves.

"The first one he gave to his son for life, the second one he gave to his widow for life, and after her death to his son for life. Then as to the two halves he devised them to his grandson absolutely, if he be living at the time of the death of the son Clarence J. Grieves.

"If the grandson is not living at that time, a life estate in the two halves is given to the widow, if she be alive, then on her death the two halves are devised to the heirs, etc., of the grandson absolutely.

"This is subject to the provision conferring on the widow the power to dispose of $12,000.00 of the second half by will only.

"The will does not confer power 'of sale on any of the beneficiaries.

"The court so construes the will, and it is so adjudged, ordered and decreed this 21st day of August, 1917."

It is from the above decree that this appeal is taken.

We will consider each of the three questions in the order in which they were presented to and passed upon by the Court below.

In determining the first of these questions we must first ascertain what interests passed under the will unto Clarence J. Grieves in each of the halves of the rest and residue of the estate. The will clearly directs that the rest and residue of the estate be divided into two equal parts. This direction is followed by the provision that "one portion thereof I give, devise and bequeath unto my son, Clarence J. Grieves." This language was, no doubt, sufficient to vest in the son upon the death of the father, a fee simple estate in such half of the rest and residue of his property, real, personal and mixed (Sec. 327 of Art. 93 of the Code of 1912; *Johns Hopkins University* v. *Garrett,* 128 Md. 347), unless there is found in some subsequent part of the will language clearly showing that it was not the intention of the testator to give or devise to his son such an estate. *Duering* v. *Brill,* 127 Md. 108.

The testator then proceeds to dispose of the other half of the rest and residue of his estate without saying more at such time as to the disposition of the first half; and in disposing of the latter half he says, "the other portion I give, devise and bequeath unto my wife, Laura Simpers Grieves, for and during the term of her natural life, with power to her to dispose of such portion thereof by will as she may see fit, not exceeding, however, in value the amount of eight thousand dollars, and from and immediately after the death of my said wife, I desire that such portion hereby left to her, which shall not have been disposed of by will, shall vest in

and become the absolute property of my son Clarence J. Grieves, his heirs and assigns." This language, vested in the son a fee simple title in the said second half of the residue of the estate, subject to the life estate of the widow, unless there be found some qualification or limitation in the will showing with equal clearness a different intention on the part of the testator. It is, therefore, important that we should carefully consider what followed.

With no greater stop than a semi-colon following the above quoted parts of the will, and with the sentence, starting with the beginning of the third paragraph, not yet concluded, the testator proceeds by saying "and it is my desire that all the property received from me by my son Clarence J. Grieves, either directly or otherwise through my said wife, shall pass to my grandson, Edward Weldin Ramsey Grieves, if living at the time of the death of my son, Clarence J. Grieves; and should my said grandson not be living at the time of the death of my son Clarence J. Grieves and should be survived by his stepmother, Hannah Ramsay Grieves, then I desire that she shall have the life interest in such portion, and upon her death said property shall vest absolutely in the heirs, personal representatives and assigns of the said Edward Weldin Ramsey Grieves, per stirpes and not per capita."

The appellants contend that this language does not modify the legal effect of the previous language of the will, which standing alone would vest in the son a fee simple title in the property devised to him, subject to the wife's life estate in the second half.

Their contention being that such language has no legal binding force in controlling the disposition of the property under the will; that it expresses but a mere wish of the testator that his son shall voluntarily dispose of the property passing to him under the will in the manner indicated thereby. This contention is based upon the use by the testator of the word *"desire,"* in saying that it is my *desire* that all the property received from me by my son * * * shall pass to my grandson," etc. The word desire is used by the testator no

less than five times in the third paragraph of the will. It appears (1) in the direction that the residue of his estate be divided in two equal parts; (2) in passing an estate to the son upon the death of the widow; (3) in passing the property received by the son under the will to the grandson if living at the time of his death; (4) in passing a life estate to the step-mother under the conditions mentioned; and (5) in directing that his life insurance, made payable to his wife, should not be considered in the division of the residue of his property between her and her son. The word also appears in the codicil to the will where he directs that the amount which the wife is empowered to dispose of under the will should be increased from $8,000.00 to $12,000.00.

In the first connection in which the word is used it must be regarded as a positive direction as to the division of the residue of his property. In the second instance,—where the son relies upon its use to pass to him an estate upon the death of his mother—it is claimed by the appellants to be mandatory in its meaning. In the 3rd and 4th instances, however, where estates pass to grandson and step-mother respectively, it is urged by the appellants that the word is precatory and not mandatory in its meaning. As used the fifth time in the third paragraph of the will, and as used in the codicil thereto, it can not be regarded as otherwise than mandatory. Thus it will be seen that the only times in which the word is claimed by the appellants to have been used in a precatory sense is when used in passing the estate to the grandson upon the death of the son, and in passing a life estate to the step-mother, in the event of the grandson dying in the lifetime of his son, and of her surviving the son. It is true a different meaning may be given to the same word appearing in different parts of the same will, depending upon the connection in which it is used, but it should clearly appear therefrom that such different meaning was so intended by the testator.

In the case before us it is not shown from the connection in which the word "desire" is used in passing estates to the

grandson and stepmother that it was the intention of the testator to give to such word a precatory meaning, when at all other times it was undoubtedly used in a mandatory sense.

In the recent case of *Pattison* v. *Farley,* 130 Md. 411, this Court, speaking through JUDGE BRISCOE, said: "In 1 *Jarman on Wills,* 412, it is said that it has become an established rule in the construction of wills that if a testator in one part of his will gives to a person an estate of inheritance in lands or an absolute interest in personalty, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a life interest only, the prior gift is restricted accordingly."

In *Iglehart* v. *Kirwan,* 10 Md. 559, this Court said, in cases of repugnancy, when the clauses can not stand together and have effect, it has become an established rule that the gift which is posterior in local position shall prevail, the subsequent words being considered as denoting a subsequent intention. *Hollins* v. *Coonan,* 9 Gill, 63; *Manning* v. *Thruston,* 59 Md. 218; *Welsh* v. *Gist,* 101 Md. 610; 40 *Cyc.* 1416-1417. See also the cases of *Mee* v. *Gordon,* 187 N. Y. 400; 10 *A. & E. Annotated Cases,* 172.

It is clear, we think, that the subsequent qualifying language found in the 3rd paragraph of the will relates to and modifies the effect of the previous language, found in the same sentence, to the extent of cutting down the son's fee simple or absolute estate in the property to an estate for life in each of the halves, subject to the life estate of the widow in the second half, with remainder over, as stated in the will. We, therefore, agree with the lower Court in its answer, found in its decree, to the first of the three questions presented by this appeal.

2. The amount that the widow was empowered to dispose of under the will was $8,000.00, but by the codicil this amount was increased to $12,000.00. Under the will, she was given the power to dispose of the amount therein

mentioned by will only. The codicil which increased the amount named in the will refers to that amount as "the amount which my wife may dispose of *during her life,* or by last will and testament," when as a matter of fact the power referred to in the will gave to her no power to dispose of it during her life. It is because of the erroneous recital of this provision of the will that the claim is made that the codicil not only increased the amount she shall have power to dispose of, but that it conferred upon her the additional power to dispose of the same *during her life.* This, we think, was not the intention of the testator.

The language of the codicil is "that the sum of $8,000.00 mentioned in the third paragraph of my said will, as the amount which my wife may dispose of, during her life, or by last will and testament, shall be increased to twelve thousand ($12,000.00) dollars, *with the same rights of disposal as therein mentioned."* Her rights of disposal under the will were by will only, and, after the amount was increased by the codicil, she was to have the *same rights of disposal.* These rights were not to be lessened or enlarged by the codicil, but were to remain the same. To allow her to dispose of such increased amount during her life would enlarge her rights or power of disposal conferred upon her by the will and would not be in harmony with the provision of the codicil, that her rights of disposal should be the same as those mentioned in the will.

The reference in the codicil to the provision in the will was, we think, a mere erroneous recital of such provision, with no design or intention of the testator to enlarge the power of disposal conferred upon the wife by the will other than to increase the amount. This, we think, is clearly shown by what follows in the codicil.

The disposition of a will will not be disturbed by an erroneous recital of its contents in a codicil, unless a design to revoke or modify the disposition in the will can be fairly collected from the whole instrument. 1 *Jarman on Wills,* p.

529, etc.   The Court we think was right in its answers to the question in respect to this provision of the will.

3. The third and last question presented inquires as to the meaning and effect of the parenthetical clause found at the conclusion of said third paragraph of the will, where it is said "these provisions, however, as to my grandson and his step-mother shall not be deemed in any manner, to restrict the proper use nor change of investment of interest, or the principal of said fund."   The Court below, in construing this provision of the will held that it did "not confer power of sale on any of the beneficiaries."

The meaning of this provision is not at all clearly expressed, but its object, we think, was to define the rights of the life tenants, the son and widow, in the use and management of the property so devised to them, under the third paragraph of the will.

The property so devised consists as we are told in one of the briefs, almost exclusively of stocks and bonds.   Only life estates therein were devised to the widow and son, these may continue for years, especially that of the son, and it was, we think, to give to them, in addition to their unrestricted use of said property, the right to change the investments in which the "fund" was invested.

To make such changes it may and no doubt will be necessary at times to sell some of such property, and this, we think, the life tenants have the power to do under this provision of the will.

The Court below having held that no power of sale was conferred upon these beneficiaries erred in so holding, and to that extent the decree will be reversed and case remanded.

*Decree reversed in part and affirmed in part, and the case remanded, costs to be paid out of the fund.*