ROSENA C. JONES, ET AL. *v.* WILSIE HOLLOWAY, ET AL.

[No. 17, January Term, 1944.]

*Decided March 23, 1944.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, and MELVIN, JJ.

*Lewis C. Merryman,* with whom were *Taylor & Taylor* on the brief, for the appellants.

*J. Edgar Harvey* and *William W. Travers,* with whom were *Harvey & Cropper* and *Woodcock, Webb, Bounds & Travers* on the brief, for the appellees.

42

DELAPLAINE, J., delivered the opinion of the Court.

Manlius K. Morris, of Wicomico County, Maryland, died in 1941 leaving a will and three codicils. His executors, Rosena C. Jones and Willis Morris, have brought this appeal from a decree construing the will and the first and second codicils.

First, we will consider the devise of the home on Ocean City Boulevard. In the will, made in 1931, the testator gave to his daughter, Wilsie, a life estate in the "bungalow home, * * * which consists of about five and a half acres of land, and the filling station situate thereon." He also bequeathed to her $5,000, but, if necessary on account of her mental condition, to be held in trust for her use during her lifetimes, any surplus remaining thereafter to revert to the residue of his estate. His wife died in 1932, and his daughter became incurably insane. In the first codicil, made in 1933, he revoked the devise of the "brick bungalow home," and added it to the residue; but in addition to reaffirming the bequest of $5,000, he directed his executors to use enough of his estate to provide adequately for his daughter's care and maintenance. In the second codicil, made in 1936, the testator, having married again in 1933, withdrew the "brick bungalow home" from the residue, and devised it to his wife, Stella R. Morris, for life.

After making his will the testator erected a weatherboard shop between the bungalow on one side of the property and the filling station on the other. The executors contend (1) that the testator, by making a drain between the bungalow and the shop and planting a row of evergreens along the ditch, divided the property into separate parts; and (2) that the first codicil revoked the devise only as to the land appurtenant to the dwelling, and did not revoke it as to the land appurtenant to the shop and filling station. The object of testamentary construction is to ascertain the intention of the testator from the language of his will, read in the light of the surrounding circumstances at the time it was made, and to give full effect to it unless it is contrary to some estab-

lished rule of law. *West. v. Sellmayer,* 150 Md. 478, 133 A. 333; *Gent v. Kelbaugh,* 179 Md. 343, 18 A. 2d 595; *Robinson v. Mercantile Trust Co.,* 180 Md. 336, 24 A. 2d 299, 138 A.L.R. 1427. The Court should consider the situation of the testator and his relations with the recipients of his bounty in connection with the language of the will, in order to be enlightened as to his motives and intention in making the will. *Henderson v. Henderson,* 64 Md. 185, 1 A. 72; *Childs' Estate v. Hoagland,* 181 Md. 550, 30 A. 2d 766. It naturally follows that the context of a will and the surrounding circumstances at the time it was made may be considered in determining the amount of land that passes under a devise of a house. In accordance with the ancient principle of the common law that a house includes the curtilage surrounding it, it is held that a devise of a dwelling house, by any description sufficiently certain to afford the means of its identification, passes title not only to the land covered by the house but any adjacent land which was used by the testator in connection with it and which is necessary for its reasonable use and enjoyment, in the absence of definite expression of intention to the contrary. *Gilbert v. McCreary,* 87 W. Va. 56, 104 S.E. 273, 12 A.L.R. 1172; 3 Page on Wills, Lifetime Edition, Sec. 959; 1 Underhill, Law of Wills, 1900 Ed., Sec. 302.

In a case in Massachusetts, where a husband left to his widow the use of the "house in which we now live," but it did not appear whether a stable in the rear of the house was so connected with it as to pass under the will, Justice Holmes observed: "The mode of use in the testator's lifetimes does not necessarily establish that the stable is included in the words * * *." *Bridge v. Bridge,* 146 Mass. 373, 15 N.E. 899, 902. But it is not overlooked that the word "home" has a much broader meaning than "house." *Willett v. Carroll,* 13 Md. 459, 468. Ordinarily, the devise of a home includes not only the dwelling house, but the entire residence estate. *Chase National Bank v. Deichmiller,* 107 N.J.Eq. 379, 152 A. 697. In determining whether certain appurtenances

pass with a home under a devise, the use to which they were put in the testator's lifetime are considered important circumstances.  Usually the person to whom a home is devised can claim all appurtenances which were customarily enjoyed by the occupant and which tend to make it a convenient and agreeable place of abode or business.  If the devisee himself lived there and enjoyed certain appurtenances, then the inference is especially strong that the testator intended him to continue to enjoy those appurtenances.  *2 Jarman on Wills*, 7th Ed., 1261, 1262.  We do not believe the evidence as to the ditch and evergreens is sufficient to prove that the testator intended to divide his property into separate parts.  Indeed, such a division of the property might prove to be undesirable, if not detrimental.  The testator's widow explained that her husband built the shop at her request, and that he planted the evergreens merely for the purpos of beautifying their home.  Furthermore, the testator has made ample provision for the care and maintenance of his daughter for the rest of her life.  Carrying out his wishes, the Court ordered the executors to set aside $5,000 for her support in addition to the $5,000 bequeathed by the will.  No party to this proceeding has expressed any doubt that the total trust fund of $10,000 is ample for its purpose, as the charge for keeping the patient at Springfield State Hospital is only $360 a year.  The executors concede that they have no objection to the allowance, if this Court decides that the daughter has no interest in the real estate.  We cannot believe that the testator intended to give his widow only the house, thereby depriving her of the buildings which would help to provide for her support, especially in view of the fact that he has made ample provision for his daughter's maintenance.

If there were any doubt in this case, it would be removed by the fact that the testator gave a complete description in his will of what his home consisted.  We think it was unnecessary for him to repeat the entire description in the codicils.  Chief Judge Alvey, in con-

struing the will and codicil of Governor Lloyd, declared the established rule in this State that a will and codicil are to be construed together as one instrument and reconciled as far as practicable. *Buchanan v. Lloyd,* 64 Md. 306, 310, 1 A. 845, 6 A. 171; *McLaughlin v. Fleming,* 124 Md. 28, 91 A. 774; *Loyola College v. Dugan,* 137 Md. 545, 113 A. 81; *Hutton v. Safe Deposit & Trust Co.,* 150 Md. 539, 133 A. 308. It is also a settled rule in Maryland that when a certain term appears in a will more than once, the Court will infer that the testator intended the term to have the same meaning wherever used, unless a contrary intention clearly appears from the context. If the testator has used words in one part of his will in a way that clearly indicates his own understanding of their import, whether or not it differs from their ordinary or legal meaning, there can be no safer way to ascertain his purpose than to give to the same words when they appear elsewhere in the will the same meaning that he attached to them in the instance where his understanding of them is apparent, except when a different purpose in their use is disclosed. *Grieves v. Grieves,* 132 Md. 300, 307, 103 A. 572; *Fowler v. Whalen,* 83 N.H. 453, 144 A. 63, 75 A.L.R. 752. In this case there is nothing in the codicils to qualify the meaning of "bungalow home," as defined in the will. It would be unreasonable to suppose that the testator, after giving a complete description of the property in question, later intended an entirely different meaning simply because he used the descriptive word "brick." It is our opinion, therefore, that the Court was right in holding that the first codicil withdrew the entire property from the daughter, and that the second codicil devised the entire property to the widow.

Secondly, we construe the devise of "the farm known as the Palmer Farm." In February, 1927, the testator bought a tract of 33 acres of land near Powellville, once owned by William H. Palmer; and in June of that year bought an adjoining tract of 160 acres, described in the deed as "Hayfield" or the "William H. Palmer Land."

The executors urge that the larger tract is timber land and is not a part of the farm. In the present day, both in England and the United States, a farm in its ordinary acceptation means any considerabel tract of land, or a number of small tracts, devoted wholly or partially to agricultural purposes or the pasturage of cattle, but it may and often does include not only cultivated land and pasture land but also woodland. *1 Underhill, Law of Wills*, Sec. 303; 2 *Jarman on Wills*, 7th Ed., 1263. Whether a devise of a farm includes an adjacent parcel of woodland depends upon the intention of the testator as ascertained from the four corners of the will, considered in the light of surrounding circumstances. In one case where the testator owned a farm in the State of Rhode Island, and a wood lot less than a mile away in the State of Massachusetts, it was held that, although he had used wood from the lot, and it appeared that the lot was a part of the farm in some respects, yet the evidence was not sufficiently strong to prove that the lot was actually a part of the farm. *Allen v. Richards*, 5 Pick., Mass. 512. Whenever it is clear, however, that a tract of land is really a part of a farm, even though it may be woodland or meadow, and even though not adjoining the farm, the Court will hold that it passes with the farm, unless the testator clearly indicates his intention otherwise. Two or more separate tracts, even though not contiguous, can be devised by its popular name, provided that they have been used together and have been commonly known by that name. Any devise of property by name includes the entire tract, generally known by that name, and not merely the smallest portion thereof to which the name might be applied. *Gafney v. Kenison*, 64 N.H. 354, 10 A. 706; *Bulkley v. Moss*, 109 Conn. 170, 145 A. 882; *3 Page on Wills*, Lifetime Edition, Sec. 959.

It is a fundamental principle that where the language of a will is plain and unambiguous, no extrinsic evidence is admissible to show that the testator's intention was different from that which the will discloses. Any evidence intended to modify the language of a will would

violate the statute requiring every will to be in writing signed by the testator and attested and subscribed in his presence by two or more credible witnesses. Code, 1939, Art. 93, Sec. 336. However, the rule excluding extrinsic evidence does not prevent admission of evidence which simply explains what the testator has written for the purpose of determining the subject of disposition, the objects of his bounty, or the quantity of interest intended to be given by his will. *Walston's Lessee v. White,* 5 Md. 297, 304; *Shipley v. Mercantile Trust & Deposit Co.,* 102 Md. 649, 62 A. 814; *Farmer v. Quinn's Trust Estate,* 133 Md. 558, 564, 105 A. 763; *Darden v. Bright,* 173 Md. 563, 568, 198 A. 431; *Miller, Construction of Wills,* Secs. 40-45. Hence, extrinsic evidence is admissible to show whether a certain parcel of land was used as a part of a farm devised. The Court may admit the declarations of persons who can tell how a farm has been customarily described. *1 Underhill, Law of Wills,* Sec. 303. In this case the tracts are adjoining, and both were owned by William H. Palmer until the time of his death. Edwin Morris, to whom the life estate in the Palmer Farm was devised, swore that both tracts were generally known by that name. The testator's widow declared that she had heard him speak of the Palmer Farm, but could not recall a single instance when he ever referred to Hayfield. Larry W. Palmer, son of the former owner, declared that both tracts had always been called "the Palmer land" by the people in the vicinity of Powellville. The executors said they had heard their father speak of Hayfield, but they admitted that they did not know the origin of the name. There is no evidence to show that the testator did not consider it a part of the Palmer Farm. We therefore hold that the Court was right in decreeing that the devise of the Palmer Farm includes both tracts formerly owned by William H. Palmer.

*Decree affirmed, the costs to be paid out of the estate.*