REEDY *v.* BARBER ET UX.

[No. 165, September Term, 1968.]

*Decided April 8, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*Philip Fiorello* for appellant.

*Frank C. Sherrard* for appellees.

FINAN, J., delivered the opinion of the Court.

We are presented here with a petition for declaratory judgment in which an interpretation of the will of Hurley H. Reedy is requested. The central question is whether a bungalow known as 567 Otsego Street, Havre de Grace, Maryland and surrounding ground shall pass to Daisy O. Reedy (appellant), wife of the testator, for her life with the remainder to the daughter of Hurley H. Reedy under the fifth clause of the will or shall it pass in fee simple to the wife under the residuary clause of the will. The lower court found that there was a life estate in Daisy O. Reedy with remainder in fee simple to the daughter of the testator.

Hurley H. Reedy, the testator, acquired a parcel of improved real property from J. Earl Heck and wife by a deed dated September 15, 1942. The land fronted on Otsego Street and was

known as 571 Otsego.[1] The deed states unequivocally that the four and a fraction combined contiguous lots were known by a single street number. The property was improved by an apartment house which was located on the westerly part of the land, on lots 91 and 92, and the easterly part of the land consisted of a yard or lawn; however, the deed made no reference to the improvements or their location on the property.

On July 12, 1951, the testator married the appellant, she becoming his third wife. At the time of the marriage the testator owned an apartment house in Port Deposit, Maryland and two apartment houses in Havre de Grace, one of those being the building at 571 Otsego Street.

On January 28, 1955, testator executed a will, the interpretation of which is requested here. The will, in pertinent parts, read as follows:

## LAST WILL AND TESTAMENT
## OF H. H. REEDY

"I, H. H. Reedy, of Cecil County, Maryland, do hereby make, publish and declare this as and for my last Will and Testament, hereby revoking all other wills and codicils by me at any time heretofore made.
* * *

---

1. The deed describes the property as follows:
   " * * * [A]ll those lots or parcels of ground, situate in the City of Havre de Grace, in the Sixth Election District of Harford County in the State of Maryland, and described as follows, to wit:
   "*BEING* designated as Lots numbered 91-92-93-59- and part of Lot number 94, in Square number 229, as marked and laid out on Hopper's Map of the said City of Havre de Grace, on the northerly side of Otsego Street, and now known as No. 561 Otsego Street.
   "*BEING* all and the same lots of ground and improvements, described in a deed dated October 16, 1933, and recorded among the Land Records of Harford County, aforesaid, in Liber S.W.C. No. 227, folio 262, from Meyer H. Getz, Assignee, to the said J. Earl Heck and wife."
   The reference to one of the lots as number 59 would appear to be a typographical error as would the reference to the entire parcel as 561 Otsego Street. The proper numbering should have been, as to the lot, number 95 and, as to the whole parcel, 571 Otsego Street.

"Unto my son, Almer Reedy, of Port Deposit, Maryland, I devise my house at 66 South Main Street, Port Deposit, Maryland, together with all the furniture therein, to be his, his heirs and assigns, forever.

* * *

"Unto my dearly beloved wife, Daisy Reedy, I devise my two apartment houses, located in Havre de Grace, Maryland, to be held by her for the balance of her natural life, and upon her demise, the property at 571 Otsego Street shall go to my daughter, Dorothy V. Barber, absolutely. The house located at 667 Otsego Street shall go to my son, Almer Reedy, absolutely. [This is the fifth paragraph of the will.]

"It is my intention, wish and desire that these two properties be adequately maintained in a good state of repair, kept insured and all taxes paid out of the income therefrom, and the balance to be used by my wife, Daisy, in her sole discretion as she sees fit.

"I hereby empower my wife, Daisy to mortgage or sell either property with the permission of the respective remaindermen, if, in their joint opinion, such seems the provident thing to do for all concerned.

* * *

"All the rest, residue and remainder of my estate, wherever situate and of whatever it may consist, I give, devise and bequeath unto my wife, Daisy, with the direction that she give a small item of my personal jewelry or other personal property to each of the male grandchildren and step-grandchildren as a token of my remembrance, love and esteem, and for each of the female grandchildren and step-grandchildren I direct my wife, Daisy, either to purchase a small piece of jewelry or to give each of them One Hundred Dollars ($100.-00) cash, as each may so desire. * * *."

During 1961-62 testator had a dwelling bungalow built on the easterly part of 571 Otsego Street. This bungalow was occupied by the testator and appellant until the testator's death in 1964. The bungalow was referred to as 567 Otsego Street.

It is this bungalow which the appellant claims passed to her under the residuary clause of the will and which the lower court found to have passed under the fifth clause of the testator's will.

There was testimony from a tenant of the apartment house (No. 571 Otsego Street), from a carpenter who performed work around the premises for several years prior to the execution of the will, and from the petitioner herself, that the tenants of the apartment house had the use of the easterly portion of the property (the balance of the lot), where the bungalow was later built, and that the children of the tenants used the area as a playground; clotheslines were also strung in the "back yard." There was also testimony that the testator had planned the building of the bungalow for five years prior to its construction in 1961.

The appellant makes much to do about the work she contributed to the operation of the apartment houses of her husband and of her efforts assisting in the construction of the bungalow, including a contribution for colored plaster of $400.00. However, neither her allegations nor her proof support any equitable principle upon which relief could be granted. And, as the lower court aptly pointed out in its opinion, her wifely interest in her husband's projects was not unrewarded as she (his third wife, to whom he had been married just 4 years prior to writing his will) received a life estate in two apartment houses (containing 20 apartment units) and a bungalow.

We are of a mind that there is just one basic issue to be decided on this appeal and that is, whether the lower court was correct in its finding that the erection of the bungalow on the easterly portion of the property then known as 571 Otsego Street was the addition of a fixture or improvement to real estate and under the general principle of the law applicable, became a part of that real estate originally designated as 571 Otsego Street, and nothing more. We think the lower court was correct in this conclusion.

The appellant poses three alternate attacks on the lower court's opinion: (1) that the testator never intended the designation of the property as 571 Otsego Street to include more than the apartment house and the westerly half of the lots involved; (2) that the act of the testator in building the bungalow on the

easterly portion of the property designated as 571 Otsego Street, substantially altered the legacy provided for his daughter, amounting to an ademption, thus causing the bungalow to pass to the petitioner by the residuary clause; and (3) that the bungalow should pass through the residuary clause to the petitioner as after-acquired property. We cannot agree with any of these contentions.

## I

In the instant case the Court should consider the testator's intentions and the surrounding circumstances and conditions as they existed at the date of the execution of the will and not subsequent to it. *Marty v. First National Bank of Baltimore,* 209 Md. 210, 120 A. 2d 841 (1956), *Hebden v. Keim,* 196 Md. 45, 75 A. 2d 126 (1950), *Reese v. Reese,* 190 Md. 311, 58 A. 2d 643 (1948), *Jones v. Holloway,* 183 Md. 40, 36 A. 2d 551 (1944).

There is no doubt in the Court's mind, that when the will was executed in January of 1955, the testator by his reference to street numbers, "* * * I devise my two apartment houses, * * * the property at 571 Otsego Street shall go to my daughter * * *. The house located at 667 Otsego Street shall go to my son * * *," was referring to all of the property he owned at those specific locations mentioned and 571 Otsego Street included Lots numbered 91-92-93-95 and part of Lot number 94, in Square number 229, as marked and laid out on Hooper's Map of the City of Havre de Grace, on the northerly side of Otsego Street. At that time the 10 unit apartment house occupied the westerly half of the whole property and it is our opinion that the testimony set forth in the record supports the logical conclusion that the remaining or easterly half of the property was the "curtilage" for the apartment house.

In *Jones v. Holloway,* 183 Md. 40, 36 A. 2d 551 (1944), this Court stated:

> "* * * In determining whether certain appurtenances pass with a home under a devise, the use to which they were put in the testator's lifetime are considered important circumstances. Usually the person to whom a home is devised can claim all appurte-

nances which were customarily enjoyed by the occupant and which tend to make it a convenient and agreeable place of abode or business. If the devisee himself lived there and enjoyed certain appurtenances, then the inference is especially strong that the testator intended him to continue to enjoy those appurtenances. 2 *Jarman on Wills,* 7th Ed., 1261, 1262. * * *." *Id.* at 43-44.

The informality of the description of real estate which courts at times have sanctioned in testamentary instruments is the subject of discussion in 4 *Page on Wills* (Bowie-Parker Ed.), § 33.19, pp. 322, 323.

"§ 33.19 Description of real property by popular name, use, etc.

"Since the courts endeavor to enforce the intention of testator whenever the same can be ascertained by the will, it is not necessary that the estate devised by will should be described with the accuracy necessary in the case of a deed. Devises are constantly upheld where the testator has devised real estate by its popular name without any attempt at formal description. * * *.

* * *

"A gift of a house, or of the home place, or of the home with its appurtenances, passes land which is ordinarily used in connection therewith. A gift of the homestead includes the land, buildings and the like which are used in connection with it. * * *."

The appellant argues that in the fifth paragraph of the will the use by the testator of the language "two apartment houses," was intended as a frame of reference and that by application of the principle of construction that a gift by words of general description is not enlarged by a subsequent attempt at a particular description (C.J.S. *Wills,* § 748, at 143), all that passed under the fifth paragraph of the will, insofar as 571 Otsego Street is concerned, is the westerly half of the whole property on which the apartment house was constructed and that the testator did not intend the remainder of the property at 571 Otsego

Street to be included as the curtilage. Appellant further contends that to include the remainder of the lot as the curtilage is to enlarge the general frame of reference.

We think the appellant is in error when he seeks to characterize the use of the wording "two apartment houses" as a general frame of reference employed by the testator. This is not a situation where a general description is followed by a conflicting description or a general description is followed by a specific description which seeks to lessen or enlarge the general description. In fact, in the instant case the property references can only be construed as being supplemental or complimentary to each other.

It is also a principle of construction that "* * * [T]he intention of the testator must be gathered from the four corners of the instrument and from the pertinent circumstances surrounding the testator at the time of its execution." *Sykes, Probate Law and Practice,* Vol. 1, § 51, at 47, see Maryland cases cited therein.

In the sixth paragraph of the will the testator refers to the devise made in the fifth paragraph as "these two properties" and in the seventh paragraph of the will, regarding the possible future sale or mortgage of the properties by and with the consent of the life tenant and remaindermen, he uses the language "to mortgage or sell either property," thus expressing a unit concept throughout.

To hold that at the time of the execution of the will in January, 1955, the testator in devising 571 Otsego Street intended to limit the gift to the apartment house and the westerly half of the lot it occupied, we must accept the proposition that he intended the then vacant easterly half of the lot to pass by the residuary clause of the will. This would be contrary to his obvious efforts to dispose of his real estate by specific devise. By the third paragraph of the will he left his son "my house at 66 South Main Street, Port Deposit, Maryland, * * *" and by the controversial fifth paragraph we think he intended to devise the remaining two properties he owned. To hold otherwise would also run contrary to the use and enjoyment which the testator himself had experienced with regard to the whole prop-

erty on which the apartment house was constructed at 571 Otsego Street.

The appellant cited many interesting cases approaching the factual setup of the instant case, wherein a devise of property was made in such a manner as to create a question as to which property or improvements were included in the gift. We do not think it would serve any useful purpose to review these cases, because in the final analysis they do not produce any principles of law which we have not already recited and merely emphasize that each case must be judged on its own merits.

## II and III

Proceeding on the premise that at the time of the execution of his will the testator intended the whole lot at 571 Otsego Street to be included in the devise, in the fifth paragraph, we can find no basis for the application of the ademption or after-acquired property theories, which form the second and third alternate attacks of the appellant on the lower court's opinion.

In seeking to impress the theory of ademption on the devise made in the fifth paragraph of the will the appellant relies heavily on the case of *In Re Henderson's Estate,* 94 N.Y.S.2nd 693 (Sur. Ct. 1950), wherein the testator had left "my farm * * * and the house and lot across from said farm" in trust for his five children. The five children were also residuary legatees. This will was executed in 1931. In 1938 the testator constructed a modern gas station on a corner of the farm property and operated it from 1939 until his death in 1947. The court held that the portion of the farm occupied by the filling station had been so altered as to have lost its original character and identity and that an ademption as to that portion of the farm had occurred, insofar as the devise of the farm was concerned, and accordingly that portion of the farm occupied by the gas station passed by the residuary clause.

We note that *Henderson, supra,* is an opinion of a surrogate's court and without commenting as to whether or not we think it to be good law, it suffices to say that we do not find it apposite to the case at bar. We do not think the construction of the bungalow on the whole property at 571 Otsego Street substantially altered or changed the character of the property and

that it was nothing more than the addition of a fixture or improvement to the real estate. The testimony in the instant case reveals that the testator and his wife worked around the apartment house at 571 Otsego Street and that for many years they lived in the apartment house while keeping up its maintenance. When the testator and his wife moved into the bungalow on the same property they continued to work in and around the apartment house in their efforts to maintain it. In essence, the construction of the bungalow on the same property, into which the testator and his wife moved, was little different than if they had added another unit onto the apartment house for their own use, occupancy and convenience.

Nor do we find any substance to the appellant's contention that the doctrine of after-acquired property is applicable to this case, for the simple reason that it is obvious that we are not dealing with property acquired after the execution of the will. To be sure, the property was further improved after the execution of the will but it was not after-acquired.

The will was executed in January, 1955. As Judge Mackey noted in the lower court, the testator had ample time to change his will, had he so desired, prior to the construction of the bungalow in 1961 and his death in 1964; also, as the lower court further stated:

> "The proposed construction [lower court's construction of the will] is rendered still more natural and credible when it is realized that were this apartment house lot to pass by the residue, the daughter would then be receiving only one apartment house while the son was receiving two apartment houses. The evidence is uncontradicted that there was a natural affection and a normal father-daughter relationship between the Testator and his daughter, Dorothy, so one might reasonably expect her to be provided for at least as well as the son. To give effect to the desire of the Petitioner would fail to so provide."

We are of the opinion that the decree of the lower court holding, that the entire property described in the deed from J. Earl

Heck et ux to Hurley H. Reedy dated September 15, 1942, and recorded among the Land Records of Harford County in Liber No. 275, folio 47 passes under the fifth paragraph of the will of Hurley H. Reedy dated January 28, 1955, and recorded in Will Records of Cecil County in Will Book B.C.H. No. 1, Vol. 34, page 274, to Dorothy V. Barber in fee simple, after the death of Daisy O. Reedy, life tenant under the will, should be affirmed.

> *Decree affirmed, appellant to pay costs.*